**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JONATHON MESKAUSKAS, #R-44760, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 18-1446 |
| | ) | |
| JEANETTE COWAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S
FIRST AMENDED COMPLAINT</u>**

NOW COME the Defendants, JOHN A. BAKER, ERIC J. CAMPBELL, AARON

R. HOOD, DANIEL S. LEE, CHRISTOPHER LINDSEY, SHYLER J. MATHIS, DANIEL

A. MURPHY, BRANDON ROLAND, JONATHAN STERNBERG, JOSEPH SMITH,

CHRISTOPHER WEHRENBERG, GEORGE WELBORN, and JAMES WILLIS, by and

through their attorney, Kwame Raoul, Attorney General of the State of Illinois, and for their

Answer to Plaintiff's Amended Complaint [Doc. 37] state as follows:

*I. JURISDICTION:*
*A*
*28 USC § 1367*

**<u>RESPONSE</u>:  Defendants deny the Court has jurisdiction over this matter pursuant to 28**

**U.S.C. § 1367.**

*Plaintiff: Jonathan Meskauskas*
*A. Plaintiff's mailing Address etc*
*Jonathan Meskauskas R44760*
*Pontiac Corr. Ctr*
*Po box 99*
*Pontiac IL 61764*

1

**RESPONSE:** Defendants admit Plaintiff is currently an inmate of the Illinois Department of Corrections and is housed at Pontiac Correctional Center.

> Defendant #1
>
> B. Defendant Jenette Cowan is employed as counselor supervisor with Illinois Department of corrections At Menard Correctional Center PoBox 1000 Menard IL 62259
>
> Defendant #1 at all times relevant to this complaint was employed by state government by the Illinois Department of corrections.

**RESPONSE:** Defendants admit Defendant Jeanette Cowan was an employee of IDOC and at all times relevant to this Complaint was assigned to Menard Correctional Center ("Menard").

> Defendant #2
>
> C. Defendant Jeffrey Gardiner is employed as intel officer with Illinois Department of corrections At Menard Corr. ctr PoBox 1000 Menard IL 62259
>
> At the time the claims alleged in this complaint, Defendant #2 was employed by state government with the Illinois Department of corrections.

**RESPONSE:** Defendants admit Defendant Jeffrey Gardiner was an employee of IDOC and at all times relevant to this Complaint was assigned to Menard.

Defendant #3:

    D. Defendant Debbie Knauer is employed as Administrative Review Board Chair person, office of inmate issues, with Illinois Department of Corrections 1301 Concordia Court PoBox 19277 Springfield IL 62794-9277

    employed by the state in The Illinois Department of Corrections.

**RESPONSE: Defendants admit Defendant Debbie Knauer was an employee of IDOC and was Chairperson of the Administrative Review Board at all times relevant to this Complaint.**

Defendant #4:

    E. Defendant Jeffrey Hutchinson was employed as Warden of Menard corr. ctr. with the Illinois Department of Corrections Po Box 1000 Menard IL 62259

    employed by State in Illinois Department of corrections

**RESPONSE: Defendants admit Defendant Jeffrey Hutchinson was an employee of IDOC and retired as Warden of Menard in December of 2016.**

Defendant #5:

    F. Defendant Jacqueline Lashbrook was employed as warden of Menard corr. ctr. with The Illinois Department of corrections Menard C.C. PoBox 1000 Menard IL 62259

    employed by the state in Illinois Department of corrections

**RESPONSE:** Defendants admit Defendant Jacqueline Lashbrook was an employee of IDOC and was Warden at Menard at all times relevant to this Complaint.

> Defendant #6
>
> G. Defendant John R. Baldwin is employed as the acting Director of The Illinois Department of Corrections 1301 Concordia Court P.O. Box 19277 Springfield IL 62794-9277
>
> employed by The State in The Illinois Department of Corrections

**RESPONSE:** Defendants admit Defendant John R. Baldwin was an employee of IDOC and was Acting Director of IDOC at all times relevant to this Complaint.

> Defendant #7
>
> H. Defendant Lieutenant Brad Bramlet is employed As Lieutenant with Illinois Department of Corrections Menard Corr. Ctr. PoBox 1000 Menard IL 62259
>
> Employed by State in The Illinois Department of corrections

**RESPONSE:** Defendants admit Defendant Brad Bramlet was an employee of IDOC and was assigned to Menard at all times relevant to this Complaint.

4

Defendant #8

I. Defendant JAMES W. Willis employed as officer assigned to tower four on yard on February 28, 2017 with Illinois Department of corrections Menard Corr. Ctr. PoBox 1000 Menard IL 62259

Employed by State in Illinois Department of Corrections

**RESPONSE**: Defendants admit Defendant James Willis was an employee of IDOC at all times relevant to this Complaint, and, pursuant to IDOC records, was assigned to Tower Four at Menard on February 28, 2017.

Defendant #9

J. Defendant Joseph P. Smith was assigned as East/west yard officer was present and responded to 10-10 call on February 28, 2017 officer with Illinois Department of corrections Menard Correctional Center PoBox 1000 Menard IL 62259

Employed by State in Illinois Department of corrections

**RESPONSE**: Defendants admit Defendant Joseph Smith was an employee of IDOC at all times relevant to this Complaint, and, pursuant to IDOC records, was assigned as the East/West Yard Officer on February 28, 2017.

Defendant #10

Ke. Defendant Lieutenant George R. Welborn was assigned as east house Lieutenant was present and responded to 10-10 call on February 28, 2017. Officer with Illinois Lieutenant Department of Corrections menard Correctional Center PoBox 1000 menard IL 62259

Employed by State in Illinois Department of Corrections

**RESPONSE:** Defendants admit Defendant George Welborn was an employee of IDOC at all times relevant to this Complaint, and, pursuant to IDOC records, was assigned as the East Lieutenant on February 28, 2017.

Defendant #11

Le. Defendant Lieutenant Scott T. Minh was assigned As movement lieutenant was present And responded to 10-10 call on February 28, 2017. Lieutenant with Illinois Department of Corrections menard Correctional Center PoBox 1000 menard IL 62259

Employed by State in Illinois Department of Corrections

Continued on 2 D

**RESPONSE:** Defendants admit Defendant Scott Minh was an employee of IDOC at all times relevant to this Complaint, and, pursuant to IDOC records, was assigned as the Movement Lieutenant on February 28, 2017. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

6

Defendant #12

M. Defendant Sergeant Christopher A. Wehrenberg was assigned as easthouse sergeant was present and responded to 10-10 call on February 28, 2017. Sergeant with Illinois Department of corrections Menard Correctional Center PoBox 1000 Menard IL 62259

Employed by State as Illinois Department of corrections

**RESPONSE:** Defendants admit Defendant Christopher Wehrenberg was an employee of IDOC at all times relevant to this Complaint, and, pursuant to IDOC records, was assigned as the East Sergeant on February 28, 2017. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

Defendant #13

N. Defendant Aaron R. Hood was assigned as East house Level E Escort officer was present and responded to 10-10 call on February, 28, 2017. officer with Illinois Department of corrections Menard Correctional Center PO Box 1000 Menard IL 62259

Employed by state as Illinois Department of corrections

**RESPONSE:** Defendants admit Defendant Aaron Hood was an employee of IDOC at all times relevant to this Complaint, and, pursuant to IDOC records, was assigned as the East Level E Escort on February 28, 2017. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

7

Defendant #14

O. Defendant Daniel S. Lee was Assigned as ~~one~~
East house gallery officer was present and responded to 10-10
call on February 28, 2017. Officer with Illinois Department
of Corrections Menard Correctional Center PoBox 1000 Menard
IL 62259 Employed by State in Illinois Department of Corrections.

Continued on pg 2E

**RESPONSE:** Defendants admit Defendant Daniel Lee was an employee of IDOC at all times relevant to this Complaint, and, pursuant to IDOC records, was assigned as the East 1/2 Gallery Officer on February 28, 2017. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

Defendant #15.

P. Defendant Christopher Lindsey was assigned as
East house gallery officer was present and responded to 10-10
call on February 28, 2017. Officer with Illinois Department
of Corrections Menard Correctional Center PoBox 1000
Menard IL 62259 Employed by State in Illinois
Department of Corrections.

**RESPONSE:** Defendants admit Defendant Christopher Lindsey was an employee of IDOC at all times relevant to this Complaint, and, pursuant to IDOC records, was assigned as the East 3/5 Gallery Officer on February 28, 2017. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

> Defendant 16:
>
>   Q. Defendant Daniel A Murphy was assigned as East house gallery officer was present and responded to 10-10 Call on February 28, 2017. officer with Illinois Department of Corrections Menard Correctional Center PoBox 1000 Menard IL 62259 Employed by State in Illinois Department of Corrections

**RESPONSE:** **Defendants admit Defendant Daniel Murphy was an employee of IDOC at all times relevant to this Complaint, and, pursuant to IDOC records, was assigned as the East 4/6 Gallery Officer on February 28, 2017. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

> Defendant 17:
>
>   R. Defendant Shyler J. Mathis was assigned as East house gallery officer was present and responded to 10-10 Call on February 28, 2017 officer with Illinois Department of Corrections Menard Correctional Center PoBox 1000 Menard IL 62259 Employed by State in Illinois Department of Corrections

**RESPONSE:** **Defendants admit Defendant Shyler Mathis was an employee of IDOC at all times relevant to this Complaint, and, pursuant to IDOC records, was assigned as the East 7/9 Gallery Officer on February 28, 2017. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

Defendant 18:

5. Defendant Eric S. Campbell was assigned as East house gallery officer was present and responded to 10-10 call on February 28, 2017 officer with Illinois Department of corrections Menard Correctional Center P.O Box 1000 Menard IL 62259 Employed by State to Illinois Department of Corrections

**RESPONSE:** Defendants admit Defendant Eric Campbell was an employee of IDOC at all times relevant to this Complaint, and, pursuant to IDOC records, was assigned as the East 8/10 Gallery Officer on February 28, 2017. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

Defendant 19:

T. Defendant John A. Baker was assigned as East house escort officer was present and responded to 10-10 call on February 28, 2017 officer with Illinois Department of corrections Menard correctional center Po Box 1000 menard IL 62259 employed by state in Illinois Department of corrections

**RESPONSE:** Defendants admit Defendant John Baker was an employee of IDOC at all times relevant to this Complaint, and, pursuant to IDOC records, was assigned as the East Escort/Sanitation Officer on February 28, 2017. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

Defendant 20%

> U. Defendant Brandon Roland was assigned as correctional officer trainee assigned to East house was present and responded to 10-10 call on February 28, 2017 Officer with Illinois Department of corrections menard Correctional Center PoBox 1000 Menard IL 62259 Employed by State in Illinois Department of corrections

**RESPONSE: Defendants admit Defendant Brandon Roland was an employee of IDOC at all times relevant to this Complaint, and, pursuant to IDOC records, was assigned to the East Cellhouse as a correctional officer in training on February 28, 2017. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

Defendant 21

> Vi Defendant Jonathan Sternberg was assigned as correctional officer trainee assigned to East house was present and responded to 10-10 call on February 28, 2017 officer with Illinois Department of corrections menard Correctional Center PoBox 1000 Menard IL 62259 Employed by State in Illinois Department of corrections

**RESPONSE: Defendants admit Defendant Jonathan Sternberg was an employee of IDOC at all times relevant to this Complaint, and, pursuant to IDOC records, was assigned to the East Cellhouse as a correctional officer in training on February 28, 2017. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

> Defendant 22
>
> W. Defendant Major <u>Raymond</u> Allen is employed as major with Illinois Department of Corrections Menard Corr. Ctr. Po Box 1000 Menard IL 62259
>
> Employed by State in Illinois Department of corrections

**<u>RESPONSE</u>:** **Defendants admit Defendant Raymond Allen was an employee of IDOC and was assigned to Menard at all times relevant to this Complaint.**

> Defendant # 102 23
>
> M. Defendant K. Brumleve is employed as correctional officer with Illinois Department of Corrections Menard Corr. Ctr. Po Box 1000 Menard IL 62259
>
> employed by the state in the Illinois Department of corrections

**<u>RESPONSE</u>:** **Defendants admit Defendant Kyle Brumleve was an employee of IDOC and was assigned to Menard at all times relevant to this Complaint.**

> Defendant # 108 24
>
> N. Defendant <u>George</u> Dudzinski is employed as correctional officer with Illinois Department of corrections Menard Corr. Ctr. Po Box 1000 Menard IL 62259
>
> employed by the state in the Illinois Department of corrections

**<u>RESPONSE</u>:** **Defendants admit Defendant George Dudzinski was an employee of IDOC and was assigned to Menard at all times relevant to this Complaint.**

## II.   PREVIOUS LAWSUITS

A.   Have you begun any other lawsuits in state or federal court relating to your imprisonment?   ☑ Yes   ☐ No

B.   If your answer to "A" is YES, describe each lawsuit in the space below. If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline. Failure to comply with this provision may result in summary denial of your complaint.

1st   1.   Parties to previous lawsuits:
Plaintiff(s):  Jonathon Meskavskas

Defendant(s):  Jason B. Buskohl  Kevin Reichert, William Spiller Jeanette Hecht Robert M. Hughes, Jason N. Hart John Trost, Werfans Health Sources

2.   Court (if federal court, name of the district; if state court, name of the county):  Southern District of Illinois

3.   Docket number:  3:15-CV-00431-SCW

4.   Name of Judge to whom case was assigned:
Magistrate Judge

5.   Type of case (for example: Was it a habeas corpus or civil rights action?):  Civil rights

6.   Disposition of case (for example: Was the case dismissed? Was it appealed? Is it still pending?):  Still pending too to settle for partial jury Trial concluded June 15, 2018

7.   Approximate date of filing lawsuit:
June (?) of 2015

8.   Approximate date of disposition:
Still pending Trial concluded

13

II Previous Lawsuits Continued:

   2nd  1. Parties to previous lawsuits
           Plaintiff Jonathon Meskauskas
           Defendants Randy Pfister, William Brown
        2. Court: Northern District of Illinois
        3. Docket number 16-cv-9795
        4. Name of Judge: Edmond E. Chang
        5. Type of case: Civil rights
        6. Disposition of Case: settled may 10, 2018
did not receive money yet, and wait for sometime
        7. Approximate Date of filing lawsuit: October 2016
        8. Approximate date of disposition: May 10, 2018


3rd  1. Parties to previous lawsuit
         Plaintiff Jonathon Meskauskas
         Defendants wexford Health Sources Inc, Latonya Williams
              Randy Pfister
      2. Court: northern District of Illinois
      3. Docket number 18 C 0012
      4. Name of Judge Edmond E. Chang
      5. Type of case: civil rights
      6. Disposition of case: initial complaint dismissed without prejudice
         Amended complaint still pending
      7. filed: January 2018
      8 disposition: still pending 3A

. . .   . . .

4ᴬ

1. Parties to previous lawsuit:

   Plaintiff Jonathen Meskoushas

   Defendants: Jacqueline Lashbrook, Kelly Pierce, Misty Price

2. Court: State court, Randolph County, Illinois

3. Docket number: 17 MR 112

4. Name of Judge: Gene Gross

5. Type of case: Petition for Mandamus

6. Disposition: Court entered order dismissing with leave to amend with 45 days

7. Approximate date of filing: Dec 26 2017

8. Approximate date of disposition: June 11, 2018

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in this paragraph pertaining to Plaintiff's litigation history while in IDOC custody.

III.   GRIEVANCE PROCEDURE

A.   Is there a prisoner grievance procedure in the institution? ☑Yes   ☐ No

B.   Did you present the facts relating to your complaint in the prisoner grievance procedure?   ☑Yes   ☐ No

C.   If your answer is YES,

   1.   What steps did you take? First, I Appealed the denial of P.C status on 12-1-16 which functioned as a grievance directly to A.R.B. On February 23, 2017 a hearing was held. Realizing I could be denied P.C Status I filed for a motion for Preliminary injunction (see Meskoukas v. Buskohl 3:15-CV-00431-MJR-SCW DOC # 95 (Continued on p. 4ᴬ)

**RESPONSE:** Defendants admit there is a grievance procedure at Menard. Defendants admit that Plaintiff appealed the denial of his protective custody request on December 1, 2016. Defendants admit the Administrative Review Board ("ARB") held a video conference

15

pertaining to Plaintiff's protective custody denial on February 23, 2017, and found that Plaintiff had not provided sufficient, verifiable information to justify placement in Protective Custody. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

III Grievance Procedure continued from pg 8

C. ( What steps did you take? Continued
     On march 12, 2017 I filed an emergency grievance with
Warden Jacqueline Lashbrook (exhibit C)
     I mailed this grievance directly to Warden Lashbrook along
with another emergency grievance via US postal service (see exhibit C)
march 12, 2017. P.96 postage receipt mailed out as legal mail on
march 21, 2017.
     I received unrelated emergency grievance back that was enclosed
in the same letter as exhibit C.  So A-B-I received no response
to exhibit C. On April 7, 2017 I inquired with counselor
Price about status of grievance And received no response. So, on
April 16, 2017 I refiled the original march 12, 2017 grievance
with minor changes, with the correction (see exhibit C2)
     On April 24, 2017, within the 60 day time frame for
filing a grievance after an assault I documented these efforts
in a notarized affidavit - (see exhibit D)
     On July 31, 2017 I filed a grievance with new
counselor, Roddy, about, among other things, the unanswered
grievances. This grievance was filed simultaneously with
Counselor, Warden And ARB. (See Attached Exhibit E)

RESPONSE: Defendants admit that Plaintiff filed grievances dated March 12, 2017 and July 31, 2017. Defendants deny Plaintiff filed a grievance dated April 16, 2017. Defendants admit

Plaintiff discussed the grievance procedure with Counselor Price on April 7, 2017. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

III Grievance Procedure Continued from page #A :

After receiving counselor's response I Appealed to the grievance officer (see exhibit F) And then to ARB (see exhibit G)

On July 31, 2017 I also filed An emergency grievance About back pain and not being called to sick call. (see, exhibit H)

Finally, in an effort to receive a response on the march 12, 2017 and April 16, 2017 grievances I filed a Petition for Mandamus in the circuit court of Randolph county Illinois (meskauskas v. Lashbrook et al case # 17 MR 112) ultimately filed on December 26, 2017.

I was naive to think this would prompt I.D.O.C employees to just respond to the grievances but through their counsel they've fought me tooth and nail.

On June 11, 2018 The Judge presiding over the mandamus ruled as follows: "Plaintiff's complaint is written in a narrative form and at times illegible. The 2-615 motion is appropriate in That Plaintiff must allege specific non discretionary duties. In order to obtain mandamus relief, a Plaintiff combines complaints concerning four separate grievances in a single narrative. Therefore, this court finds That the Complaint fails to state a cause of action and is Dismissed pursuant to 2-615. Plaintiff is hereby Granted 45 days to file An Amended complaint.

**RESPONSE:** Defendants admit Plaintiff appealed the denial of his grievance dated July 31, 2017. Defendants lack knowledge or information sufficient to form a belief about the remaining allegations in this paragraph.

17

III Grievance Procedure continued from 4B

I have named John Doe Defendants in the instant complaint
And the 2 year limitations period is approaching, so I'll need
time to identify these John Doe Defendants; therefore, I can
not attempt to refile an Amended mandamus And wait
Another seven months just to get the run around.

I've exhausted all available remedies as the grievance
process was partially made unavailable to me in some parts
, but when left unheeded I did fully, exhaust.

**RESPONSE: Defendants deny any John Doe Defendants are named in the instant Complaint. Defendants deny Plaintiff has exhausted his administrative remedies. Defendants lack knowledge or information sufficient to form a belief about the remaining allegations in this paragraph.**

C.   If your answer is YES,
  1.   What steps did you take? First, I Appealed the denial of P.C
  status on 12-1-16 which functioned as a grievance directly to ARB.
  On February 23, 2017 a hearing was held. Realizing I could be denied
  P.C status I filed for a motion for Preliminary injunction (see mastrushan
  v. Baldwin 3:15-CV-0093(-MJR-SCW  DOC# 95 (Continued on pg 4A)
  2.   What was the result?
  ex A  12-1-16 was affirmed by ARB February 23 2017. I received no
  response on exhibit C and C2 march 12 2017 emergency grievance or April 16, 2017 grievance
  making grievance process unavailable to me. July 1st. On July 31, 2017 grievance was denied
  And ex H emergency grievance was denied as an emergency but I was given the requested relief
  D.   If your answer is NO, explain why not.  medical treatment completing the process

**RESPONSE: Defendants admit Plaintiff sent the denial of his protective custody to the Administrative Review Board ("ARB"), which was received on December 8, 2016. Defendants further admit the ARB held a video conference with Plaintiff pertaining to his**

grievance on February 23, 2017 and denied his grievance. **Defendants deny Plaintiff has**

**exhausted his administrative remedies. Defendants lack knowledge or information sufficient**

**to form a belief about the remaining allegations in this paragraph.**

D.   If your answer is NO, explain why not _____ medical treatment completing the

DNA

E.   If there is no prisoner grievance procedure in the institution, did you
complain to prison authorities?      DNA    ☐ Yes    ☐ No

F.   If your answer is YES,
1.   What steps did you take?
DNA

2.   What was the result?
DNA

G.   If your answer is NO, explain why not.
DNA

H.   Attach copies of your request for an administrative remedy and any
response you received.  If you cannot do so, explain why not.

Attached Are: exhibit A Appeal of the denial of P.C status
on 12-1-16; exhibit B summary of hearing held on February 23,2017
to ARB; Attached are exhibits A through H

**RESPONSE:** Defendants deny that the prisoner grievance procedure at Menard does not

apply. Defendants admit Plaintiff attached Exhibits A through H to his Amended Complaint.

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in this paragraph.

# IV.    STATEMENT OF CLAIM

), Menard Correctional Center is a Maximum security prison within the Illinois Department of corrections. Menard being located in Southern Illinois is treated as a punishment institution within I.D.O.C, because it is so far from the chicago land Area where most prisoners are from.

**RESPONSE:** Defendants admit Menard Correctional Center is a maximum security prison located in Chester, Illinois. Defendants lack knowledge or information sufficient to form a belief about the remaining allegations in this paragraph.

2. Because Menard C.C. is treated as a punishment institution, The more hardened violent gang members are sent to menard C.C. These gang members are identified as Security Threat Group (STG's) within I.D.O.C.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

3. Menard C.C. has a greater population of active STG members as compared to other institutions, such as Stateville C.C. Given that the STG's have a greater concentration of members in menard C.C., These STG's are able to enforce certain policies.

**RESPONSE:** Defendants admit there is security threat group or "STG" activity at Menard. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.

4. one such violent STG is a group made up of various street gangs known as The Latin Folks. The Latin Folks in menard have created a well-known policies, which They enforce with violence or the threat of violence.

**RESPONSE:** Defendants admit that certain security threat groups or "STGs" exist in IDOC prison populations. Defendants further admit that one STG within the IDOC prison system is known as the "Latin Folks." Defendants lack knowledge or information sufficient to form a belief about the remaining allegations in this paragraph.

5. One such policy created by the Latin Folks is that: "No off-count members (non-participating members) are allowed to be in general population within Menard C.C." This policy is enforced with violence.

**RESPONSE:** Defendants admit knowledge of a Latin Folks policy pertaining to "off-count" members of the STG not being allowed in general population. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

6. Another well-known policy created by the violent STG Latin Folks is that any member that goes to protective custody is considered a "stoolpigeon." (snitch) and can not return to general population. Again this policy is enforced with violence.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

7. The Latin Folks STG create lists of members who have violated major laws or policies commonly referred to as the "blast list." The blast list is a hit list, circulated throughout Menard C.C. and any person who finds himself on the blast list is subject to assault at any time by any member of the Latin Folks STG.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

8. The Plaintiff is documented by I.D.O.C as being a member of the Latin Folks STG. However, The Plaintiff has attempted to renounce his previous gang affiliation in the past. And does not wish to be a part of the Latin Folks STG.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

9. On November 18, 2016 The Plaintiff was transferred from Stateville C.C. to Menard C.C. Plaintiff was placed on 3 gallery in West house in cell 312.

**RESPONSE:** Defendants admit Plaintiff was transferred from Stateville Correctional Center to Menard on November 18, 2016, and was housed in cell 312 in West House at Menard.

10. A high ranking member of the Latin Folks STG named D.C., a Spanish Gangster Disciple, whom Plaintiff believes real name might be Decarlo Harris was assigned to cell 308 or around there. D.C. offered Plaintiff a "care package" containing hygiene items usually given to members who arrive from other institutions. Plaintiff declined the offer of the care package and stated that he did not wish to be on-count with the Latin Folks STG. D.C. reiterated the policy of no off-count members are allowed in general population at Menard C.C.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

11. Plaintiff, who understood that if he defied the Latin Folks policy it would result in violent Assault, told D.C. he understood and would go to Protective Custody. Plaintiff immediately sought protective custody Status, but was not removed from West House until November 21, 2016. Over the weekend Plaintiff's cell was left on deadlock, and he did not leave his cell. On November 21, 2016, Plaintiff was observed by D.C. going to Protective Custody.

**RESPONSE: Defendants admit Plaintiff was relocated to protective custody on November 21, 2016. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

12. Plaintiff was removed to another building and placed in Protective Custody intake. Plaintiff was interviewed by Defendants Jenette Cowan, and I.A. officer Gardiner.

**RESPONSE: Defendants admit Plaintiff was relocated to protective custody on November 21, 2016. Defendants admit that upon his arrival in protective custody, Plaintiff was interviewed by Defendants Jeanette Cowan and Jeffrey Gardiner regarding his request for placement in protective custody.**

13. Plaintiff reiterated the above sequence of events to each including the Latin Folks policy of no off count members being allowed in general population.

**RESPONSE: Defendants admit Plaintiff alleged on his protective custody request that he was "off-count" and was concerned that he would be threatened by members of STGs.**

23

Defendants lack knowledge or information sufficient to form a belief about the remaining allegations in this paragraph.

14. Officer Gardiner admitted to Plaintiff that he was aware of the particular Latin Folks policy of no off count members being allowed in general population and that in his words, the Latin Folks didn't play when it came to enforcing their policies. In fact, every defendant is well aware of the policy type allegations outlined above.

**RESPONSE**: **Defendants admit knowledge of a Latin Folks policy pertaining to "off-count" members of the STG not being allowed in general population. It is unclear what Plaintiff means by every Defendant being "well aware of the policy type allegations outlined above" and as such, Defendants lack knowledge or information sufficient to form a belief about the remaining allegations in this paragraph.**

15. Plaintiff also stated to each that because he was observed going to protective custody he is now labeled as a stool pigeon and could not return to general population if he wanted to, as stool pigeon's are assaulted and targeted for assault as described inmates.

**RESPONSE**: **Defendants lack knowledge or information sufficient to form a belief about the allegations contained in this paragraph.**

24

16. Despite being aware of the serious threat to Plaintiff's safety both Jeanette Cowan and officer Gardiner recommended that Plaintiff be denied protective custody. Defendant Warden Hutchison, based on their recommendations, denied Plaintiff protective custody status.

**RESPONSE: Defendants deny being aware of any serious threat to Plaintiff's safety. Pursuant to IDOC records, Defendants admit Defendants Cowan and Gardiner denied Plaintiff's protective custody request. Defendants admit Defendant Hutchison concurred in the recommendation of denial of Plaintiff's protective custody request.**

17. On 12-1-16 Plaintiff appealed this decision to the Administrative Review Board.

**RESPONSE: Defendants admit Plaintiff appealed the denial of his protective custody request to the ARB on December 1, 2016.**

18. In early January while awaiting the administration review boards decision, Plaintiff was housed in North 2. J.R. a documented Ambrose and Latin Folks member who was a worker in North 2 came to Plaintiff's cell and told Plaintiff that he was aware that the Plaintiff checked into P.C. and that now he couldn't come back. J.R. reiterated the policy of no off count members are allowed in general population.

**RESPONSE: Defendants admit Plaintiff was housed in North 2 at Menard in early January of 2017. Defendants lack knowledge or information sufficient to form a belief about the remaining allegations in this paragraph.**

25

*19. On February 23, 2017 Plaintiff was interviewed via video conference by Defendant Debbie Knauer, administrative review Board chairperson.*

**RESPONSE**: Defendants admit the ARB, chaired by Defendant Knauer, held a video conference hearing pertaining to Plaintiff's appeal of his protective custody denial on February 23, 2017.

*20. Plaintiff reiterated the fact that two separate Latin Folks members with menard who were in separate cellhouses reiterated the policy of no off count members were allowed in menard C.C.'s general population.*

**RESPONSE**: Defendants admit Plaintiff mentioned two individuals named "DC" and "JR", who allegedly reiterated the Latin Folk policy of being "off-count", during his hearing with the ARB. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

*21. When asked if Plaintiff was threatened, Plaintiff responded that stating the policy is an implied threat. As the Latin Folks have no other way of enforcing their policies other than violence or the threat of violence, Plaintiff also reiterated that he would be assaulted if forced to go back to general population and stated because the Latin Folks knew he checked into P.C he would be labeled as a stool pigeon and assaulted.*

**RESPONSE**: Defendants admit Plaintiff alleged, during his interview with the ARB, that requesting protective custody made him "a target" by members of the Latin Folks STG.

Defendants lack knowledge or information sufficient to form a belief about the remaining allegations in this paragraph.

> 22. Defendant Debbie Knauer despite being made aware of the substantial risk to Plaintiff recommended that Plaintiff be denied Protective Custody status, and Defendant John R. Baldwin concurred with this decision.

**RESPONSE:** Defendants deny that there was any "substantial risk" to Plaintiff. Defendants deny that Plaintiff presented any actual, verifiable evidence of a credible threat to his safety. Defendants admit Defendant Baldwin, or his assignee, concurred with the decision to deny Plaintiff's grievance on February 27, 2017.

> 23. On February 28, 2017 the Plaintiff was kicked out of P.C. and sent to East house cell 901. Despite the fact that the current Warden Jacquelin Lashbrook and ~~Defendant John/Jane Doe placement officer~~ was aware of Plaintiff's fear of the Latin Folks and the substantial risk to his safety, Plaintiff was assigned to a gallery where at least seven Latin Folks would have access to him on the yard.

**RESPONSE:** Defendants admit Plaintiff was moved from protective custody on February 28, 2017, and placed in East House cell 901. Defendants deny being aware of any substantial risk to Plaintiff's safety. Defendants lack knowledge or information sufficient to form a belief about the remaining allegations in this paragraph. Defendants deny violating Plaintiff's rights whatsoever.

24. Plaintiff did not know this at the time he was assigned to cell 901. Ten minutes after arriving in the cellhouse the yardline was called. Plaintiff went to yard not knowing he would be on the yard with seven Latin Folks.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

25. As soon as one of the Latin Folks, a Satan Disciple named C-man, saw Plaintiff he recognized Plaintiff and told Plaintiff that he was aware that Plaintiff checked into P.C. because he did not want to be on count and he said Plaintiff could not be in general population. C-man threatened to have Plaintiff stabbed if he did not go to P.C. Plaintiff told him and the other Latin Folks members that were standing around that he would walk himself to P.C. as soon as he could.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

> 26. The Latin Folks conferred with themselves and Plaintiff stood by the phone area near the gate on the running path. A short while later another Latin Folks A Y/o-D named Rico told Plaintiff to tell the tower that Plaintiff feared for his life and needed to go. Plaintiff yelled to Defendant James W. Willis assigned to tower Y, and told him that Plaintiff feared for his own life and needed to go to P.C. or else he'd be assaulted. Defendant Willis responded by saying "I don't give a shit." Plaintiff waited by the tower area until yard was over.

**RESPONSE:** Defendant Willis denies ignoring any threat to Plaintiff's safety. Defendant Willis further denies stating "I don't give a shit" to Plaintiff. Defendant Willis lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph. The remaining Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

> 27. When the yard period was over Plaintiff walked to the then open gate, but before he arrived at the gate, Plaintiff was attacked from behind.

**RESPONSE:** Defendants admit the incident occurred at the end of yard period. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

28. As soon as Plaintiff was assaulted he immediately fell to the ground and balled up and did not fight back. At the time Plaintiff didn't know how many Latin Folks were attacking him but he later learned from Defendant Lieutenant Bramlet that it was only one of them.

**RESPONSE:** Defendants admit only one other inmate was involved in the incident with Plaintiff. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

29. Plaintiff was punched repeatedly in his head while laying on the ground for it seemed to be close to two minutes. Instead of intervening Lt. Bramlet and Defendants C/o Joseph P Smith, Lt. George R Welborn, Lt. Scott T Smith, Sgt. Christopher A Wehrenberg, C/o Aaron R. Hood, C/o Daniel S. Lee, Christopher Lindsay, C/o Daniel A. Murphy, C/o Skyler J. Mathis, C/o Eric S. Campbell, C/o John Alberts, C/o T Brandon Roland, Jonathan Sternberg, Major Raymond Allen, Jeffrey Gardiner who were either present before the assault or responded to the 10-10 call stood there and watched. Defendant Willis in Tower Y did not fire a warning shot from the gun in order to deter Plaintiffs assailant, and no one sprayed C/o Spray from behind the fence despite being close enough to reach Plaintiff's attacker. No one ever came on the yard, Basically each Defendant let Plaintiff's attacker hit Plaintiff until he got tired while they watched as spectators observing a school yard meeting, when Plaintiff eventually looked up he saw about Thirty of them standing and watching.

30

**RESPONSE:** **Pursuant to IDOC records, Defendants admit that no OC spray was used during the incident. Defendants deny standing and watching the Plaintiff get punched repeatedly. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

30. About 30 seconds after the Attacker stopped hitting him, Plaintiff was ordered to walk to the fence by Defendant major Allen. Another spectator who did nothing to protect Plaintiff from the brutal assault. As Plaintiff got up from the ground his back started to hurt with shooting pains down his left leg. These pains would intensify once Plaintiff's adrenaline stopped pumping and he calmed down. Plaintiff limped to the fence and was placed in cuffs.

**RESPONSE:** **Defendants lack knowledge or information with regard to the actions of Defendant Allen. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

31

> 31. Plaintiff was taken to the healthcare and was briefly seen by a nurse or physician assistant. Plaintiff had several lumps on his head, back pain, and his hip hurt. Several months later, after repeated healthcare visits, Plaintiff was diagnosed by Doctor Moldenhauer as having sciatica. Dr. Moldenhauer told Plaintiff that he could potentially be in pain for the rest of his life. Furthermore, due to the pain, Plaintiff spent almost a year trying not to move as much as possible and had poor posture, which caused Plaintiff to develop mild degenerative disc disease. Plaintiff is still in pain from his injury to this day and receives medication daily for the pain.

**RESPONSE**: Defendants admit that, according to HealthCare Unit records, Plaintiff was seen at the HealthCare Unit on February 28, 2017 and that Plaintiff was diagnosed as having sciatica on September 12, 2017 by Nurse Moldenhauer. Defendants further admit that Plaintiff was diagnosed with mild degenerative disc disease by Dr. Yousuf on November 29, 2017.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

> 32. After the healthcare on February 28, 2018, Plaintiff was then taken to Menard's segregation unit. Defendant officer Gardiner saw Plaintiff in the shower, while being strip searched, and Plaintiff told defendant Gardiner what happened.
>
> 5 & 6

**RESPONSE**: Pursuant to IDOC records, Defendants admit Plaintiff was moved to a cell in the North 2 segregation unit at Menard on February 28, 2017.

32

> 33. Defendant I.A. officer Gardiner told Plaintiff
> That The Defendant Lieutenant who witnessed The entire incident
> was Lt. Beamlet.

**RESPONSE**: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

> 34. Even though Plaintiff did not fight back and was
> the victim of an assault he was placed in a segregation cell with
> nothing. Plaintiff asked Defendant C/O Dudzinski for soap
> , tissue, and a bedroll when he placed him in The cell
> and he said's "Good luck with That."

**RESPONSE**: Pursuant to IDOC records, Defendants admit that Plaintiff did not fight back during the incident. Defendants admit Plaintiff was placed in a cell in the North 2 unit on February 28, 2017. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

> 35. Plaintiff was left with no toilet tissue until
> march 5, 2017. Plaintiff did not receive a bedroll until March
> 5 and the only reason he received soap is because on March
> 2, 2017 commissary slips were passed out and Plaintiff's
> neighbor gave him a pen The day before. Plaintiff did not
> receive his commissary soap until March 6, 2017. So
> he went without soap for about 8 days.

**RESPONSE**: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

36. Plaintiff repeatedly asked Defendant to Brumleve for soap, tissue, and sheets on Wednesday (3-1-17) Thursday (3-2-17) and friday (3-3-17) after making him aware that he did not have these things. The first time Plaintiff asked Defendant to Brumleve he stated: "weren't you fighting on the yard?" Plaintiff tried to explain to him that he was the victim of an assault but he said to Plaintiff: "Next time don't fight on the yard and you'll have tissue and soap."

**RESPONSE:** **Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

37 Begining Wednesday March 1, 2017 Plaintiff began giving medical request slips to the med techs at night, but was not called to health care until 3-18-17. In the medical request slips Plaintiff explained that he could not stand up straight, his back hurt, his hip hurt, and he had shooting pains running from his lower back down his leg to his left knee everytime he bent over or tried to move.

**RESPONSE:** **Pursuant to IDOC records, Defendants admit Plaintiff was seen in the Healthcare Unit on March 18, 2017. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

38. Plaintiff explained these excruciating pain and symptoms to Defendant K. Brumleve on March 1, 2017 and asked him to get him a med. tech. so he could receive emergency medical treatment and he laughed at Plaintiff and told him, "He had nothing coming." Do to K. Brumleve's deliberate indifference to Plaintiff's serious medical needs (sciatica/pain), Plaintiff was unnecessarily subjected to prolonged pain. Furthermore, Defendant K. Brumleve was negligent in his duty to ensure I was provided with emergency access to health care causing unnecessary prolonged pain and suffering.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

39. Plaintiff did not receive any personal property until March 10, 2017. Plaintiff was not released from segregation until March 14, 2017. Plaintiff was never served with any both type of ticket. When Plaintiff was released from segregation he is almost positive he saw his attacker, later identified tentatively as inmate Estobal(?), being released as well, so he was not given a disciplinary ticket either.          5 I

**RESPONSE:** Pursuant to IDOC records, Defendants admit Plaintiff was released from North 2 segregation on March 14, 2017. Defendants admit that Plaintiff did not receive a disciplinary ticket related to the incident on February 28, 2017. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

40. Plaintiff believes that his attacker was never given a disciplinary ticket for assaulting Plaintiff which is a good indication of the subjective mindset of each Defendant who witnessed the attack and failed to intervene or protect Plaintiff because they simply did not care to protect Plaintiff from assault. They each enjoyed the show that the attack provided. Likewise, each Defendant was negligent in failing to perform a duty owed to Plaintiff not only to protect him, but also to hold his attacker accountable for his actions as to deter future assaults. This likewise applies to I.A. officer Gardiner who investigated the incident by speaking to Plaintiff, yet did nothing.

**RESPONSE:** Defendants deny the allegations in this paragraph.

41. Each Defendant has contributed to a culture at Menard C.C. where they have repeatedly displayed deliberate indifference to inmates safety and failed to protect them. An issue that will need to be further developed in discovery, and should be considered towards punitive damages.

**RESPONSE:** Defendants deny the allegations in this paragraph.

Claims / Defendants

42. Each Defendant acted under color of state law and is being sued in his or her individual capacity.

**RESPONSE:** Defendants admit that they act under the color of state law in the performance of their official duties. Defendants admit that they are being sued in their

36

individual capacities. Defendants deny that they are liable to Plaintiff.

43. Defendant John R Baldwin And Jeffrey Hutchinson have failed to properly train, instruct And supervise Their employees regarding the placement of inmates in protective custody who request protection resulting in Plaintiff being assaulted After being denied Protective custody status And her constitutional rights being violated.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

44. Defendants John R. Baldwin And Jacqueline Lashbrook have failed to properly train, instruct And supervise Their employees Regarding The duty to respond to 10-10 calls And to protect inmates from assault And intervene when an inmate is being assaulted resulting in Plaintiff's constitutional rights being violated.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

45. Defendants Jeanette Cowan, Jeffrey Gardiner Debbie Knower, Jeffrey Hutchinson, Jacqueline Lashbrook, John R. Baldwin, Lieutenant Bramlet, Defendant James W. Willis of George R. Welborn, Scott T. Minh, Christopher A. Wehrenberg, Aaron R. Hood, Daniel S. Lee, Christopher Lindsey, Daniel A. Murphy, Skyler J. Mathre, Eric S. Campbell, John A. Baker, Joseph P. Smith Roland Brandon Jonathan Sternberg   Defendant Roger Allen

failed to protect Plaintiff, or intervene, in violation of Plaintiff's constitutional rights under the eighth Amendment applicable to the States Through The fourteenth Amendment. The Defendants were aware of a substantial risk to Plaintiff's person and displayed deliberate indifference by failing to prevent, protect, or intervene causing Plaintiff injury as outlined above.

**RESPONSE:** Defendants deny the allegations in this paragraph as they pertain to them. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations in this paragraph.

46. Defendants Jeanette Cowan, Jeffrey Gardiner, Debbie Knauer, Jeffrey Hutchinson, Jacqueline Lashbrook, John R. Baldwin, Lt. Bramlet, James Willer, George R. Welborn, Scott T. Minh, Christopher A. Wehrenberg, Aaron R. Hed, Daniel S. Lee, Christopher Lindsey, Daniel A. Murphy, Skyler J. Mathis, Eric J. Campbell, John A. Baker, Joseph P. Smith, Brandon Roland, Jonathan Sternberg, Major Allen were all negligent in violation of Illinois State tort law in that they owed a duty to Plaintiff to prevent the assault, protect him from assault, or intervene while the assault was occurring, but failed in that duty as a result of negligence, and Plaintiff ~~failed to that duty as a result~~ suffered injury as a result of each defendants negligence.

**RESPONSE:** Defendants deny the allegations in this paragraph.

47. Defendant K. Brunleww and C/O Dudzinski subjected Plaintiff to cruel and unusual punishment by subjecting him to conditions in segregation that deprived him of life's necessities, as outlined above, including but not limited to, soap for approximately eight days in violation of Plaintiff's eighth amendment right applicable to the states through the fourteenth amendment.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

48. Defendants K. Brumleve and Dudinski were negligent in violation of Illinois state tort law in that they owed Plaintiff the duty to provide lifes basic necessities soap etc, but negligently failed in that duty, and Plaintiff suffered injury as a result of that negligence in that he was deprived of lifes basic necessities and suffered emotional distress and physical discomfort.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

49. Defendant K. Brumleve was deliberately indifferent to Plaintiff's serious medical needs sciatica/pain causing unnecessary and prolonged pain when he failed to ensure that Plaintiff received emergency medical attention when made aware that Plaintiff was in extreme pain.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

50 ⅞. Defendant K. Brumleve was negligent in violation of Illinois State law in failing to perform the duty to provide Plaintiff access to medical professionals on an emergency basis, he failed in this duty, and Plaintiff suffered prolonged unnecessary pain as a result.

**RESPONSE:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

## V.    REQUEST FOR RELIEF

State exactly what you want this court to do for you. If you are a state or federal prisoner and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records, or parole), you must file your claim on a habeas corpus form, pursuant to 28 U.S.C. §§ 2241, 2254, or 2255. Copies of these forms are available from the clerk's office.

Plaintiff is requesting nominal, compensatory and punitive damages to be determined by the jury as to each Defendants liability for his physical, emotional injury and loss of standard of life as a result of his injuries.

**RESPONSE:** Defendants deny violating Plaintiff's rights. Defendants deny that Plaintiff is entitled to any relief.

### JURY DEMAND

**Defendants demand a trial by jury.**

### AFFIRMATIVE DEFENSES

**1.    Qualified Immunity.**

At all times relevant to the Plaintiff's claims, defendants charged herein acted in good faith in the performance of their official duties without violating Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known. Defendants are therefore protected from liability by the doctrine of qualified immunity.

**2.    Sovereign Immunity**

To the extent that Plaintiff's claims against Defendants are in their official capacity, the claims are barred by the doctrine of sovereign immunity.

**3.    Failure to Exhaust Administrative Remedies**

Plaintiff has filed suit concerning a prison conditions while in the Department of Corrections. Plaintiff has failed to properly exhaust his administrative remedies as required prior to filing suit under 42 U.S.C. § 1983. His claims are bared by the Prison Litigation Reform Act

(42 U.S.C. § 1997)(e)(a)), *Perez v.* Wisconsin *Dept. of Corrections* 182 F. 3d 532 (7th Cir. 1999), and *Kalinowski v. Bond, et al*., 358 F. 3d 978 (7th Cir. 2004).

### 4. Mental or Emotional Damages Barred

No Federal action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. 1997e(e). Plaintiff has not alleged that he has been physically harmed by Defendants in any way.

### 5. State Law Sovereign Immunity

Defendants were acting within the scope of their employment, which, if established, means that the tort claims against Defendants are barred by the immunity provided in the State Lawsuit Immunity Act. The State Lawsuit Immunity Act, 745 ILCS 5/1 et seq. (West 2018), provides for sovereign immunity in Illinois and prevents suits against the State or its employees except as provided by the Court of Claims Act. 705 ILCS 505/8 (West 2018). The Court of Claims is the exclusive forum for resolving lawsuits against the State of Illinois or employees acting within the scope of their employment for certain actions, including tort actions. 705 ILCS 505/8(d) (West 2018).

### 6. Public Official Immunity

At all times relevant to the Complaint, Defendant was performing official discretionary duties in good faith and therefore he is entitled to Public Official Immunity.

## <u>CONCLUSION</u>

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this honorable Court enter judgment in their favor and deny any relief to Plaintiff.

Respectfully submitted,

JOHN A. BAKER, ERIC J. CAMPBELL, AARON R. HOOD, DANIEL S. LEE, CHRISTOPHER

LINDSEY, SHYLER J. MATHIS, DANIEL A. MURPHY, BRANDON ROLAND, JONATHAN STERNBERG, JOSEPH SMITH, CHRISTOPHER WEHRENBERG, GEORGE WELBORN, and JAMES WILLIS,

Defendants,

Megan Ditzler, #6318052                          KWAME RAOUL, Illinois Attorney General,
Assistant Attorney General
500 South Second Street                              Attorney for Defendants,
Springfield, Illinois  62701
(217) 557-0261 Phone                             By:  s/ Megan Ditzler
(217) 524-5091 Fax                                       Megan Ditzler
Email: mditzler@atg.state.il.us                          Assistant Attorney General

43

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JONATHON MESKAUSKAS, #R-44760, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 18-1446 |
| | ) | |
| JEANETTE COWAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2019, the foregoing document, *Answer and Affirmative Defenses to Plaintiff's Amended Complaint*, was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

NONE

and I hereby certify that on the same date, I caused to be mailed by United States Postal Service, a copy of the foregoing document to the following non-registered participant:

Jonathon Meskauskas, #R-44760
Pontiac Correctional Center
Inmate Mail/Parcels
700 West Lincoln Street
PO Box 99
Pontiac, IL  61764


Respectfully submitted,

  s/Megan Ditzler
Megan Ditzler, #6318052
Assistant Attorney General
500 South Second Street
Springfield, Illinois  62701
(217) 557-0261 Phone
(217) 524-5091 Fax
mditzler@atg.state.il.us