IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JONATHON MESKAUSKAS, <br> #R-44760 <br>     Plaintiff, <br><br> vs. <br><br> JEANETTE COWAN, *et al.* <br><br>     Defendants. | Case No. 18−cv−1446−DWD |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Jonathon Meskauskas, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Pontiac Correctional Center, commenced this action by filing a Complaint pursuant to 42 U.S.C. § 1983 for the deprivation of his constitutional rights that occurred while at Menard Correctional Center ("Menard"). (Doc. 1). This matter is before the Court on a Motion for Summary Judgment filed by the Defendants, (Doc. 90). For the reasons set forth below, the Motion is **GRANTED in part**.

### Background

Following a review of the Complaint pursuant to 28 U.S.C. § 1915A and substitution of named individuals for Doe defendants, Plaintiff proceeded on the following claims:

> Count 1: Defendants Cowan, Gardiner, Hutchinson, Knauer, and Baldwin failed to protect Plaintiff from a substantial risk of serious harm by denying him protective custody, in violation of the Eighth Amendment;
>
> Count 2: Defendants Allen, Baker, Bramlet, Campbell, Gardiner, Hood, Lee,

1

       Lindsey, Murphy, Mathis, Roland, Sternberg, Smith, Welborn, Wehrenberg and Willis, failed to intervene to protect Plaintiff when he was attacked by Latin Folks gang members on February 28, 2017, in violation of the Eighth Amendment;

Count 3: Defendants Dudzinski and Brumleve were deliberately indifferent to Plaintiff's conditions of confinement from approximately February 28, 2017 through March 6, 2017; and

Count 4: Defendant Brumleve was deliberately indifferent to Plaintiff's serious medical condition from approximately March 1, 2017 through March 18, 2017, in violation of the Eighth Amendment.

(Docs. 6, 37). Defendants have moved for summary judgment on all claims (Doc. 90) and Plaintiff filed his opposition (Doc. 103).

## Material Facts

Plaintiff was housed in Menard between November 18, 2016 and November 2017. (Deposition of Plaintiff, Doc. 91-1 at 2). Prior to his time in IDOC custody, Plaintiff had been a member of the Ambrose Street Gang, a security threat group ("STG") affiliated with the Latin Folks STG. (*Id.*, p. 8). Upon entering IDOC, Plaintiff attempted to go "off count"—essentially withdrawing his gang affiliation. (*Id.*).

On November 20, 2016, Plaintiff submitted a request for Protective Custody ("PC") status. (Request Form, Doc. 91-3, p. 1). In it, Plaintiff stated that the Latin Folks have a policy that "no off count members are allowed in General Population in Menard" which is "enforced with violence[,]" and that if he remained in General Population he can be "assaulted by any on count Latin Folks at any time." (*Id.*). He was placed in temporary PC for eight days while his request was investigated. (*Id.*).

2

During the investigation of his request, Plaintiff was interviewed separately by Defendant Cowan (a counselor) and Defendant Gardiner, a member of the "Intelligence Unit." Plaintiff testified that he told both Cowan and Gardiner about the Latin Folks' policy, and that Gardiner evidenced prior knowledge of such a policy. (Doc. 91-1, pp. 7-9). He also testified that he told Gardiner about specific conversations with on-count Latin Folks member reminding him of his obligation to remove himself from General Population. (*Id.*, p. 7).

On November 29, 2016, Plaintiff's request for PC was denied by an unknown official signing on behalf of Defendant Warden Hutchinson. (Doc. 91-3, p. 1, Doc. 98). Defendant Hutchinson never reviewed the request. (Doc. 98).

Plaintiff grieved the denial on December 1, 2016. (Doc. 91-3, p. 1). A hearing was held before the Administrative Review Board ("ARB") on February 23, 2017. (*Id.*, p. 5). He reiterated his concerns regarding his status as off-count, that the Latin Folks would assault him in General Population, and his conversations with two on-count members regarding the Latin Folks' policy. (*Id.*, Doc. 91-1, pp. 9-10). Defendant Knauer was the only member of the ARB present and recommended denying the request. (*Id.*). An unknown IDOC official then signed on behalf of IDOC Director John Baldwin concurring with the recommendation. (Doc. 91-3, p. 5). Baldwin never reviewed the PC request. As a result, Plaintiff was placed back in General Population on February 28, 2017.

The same day Plaintiff was placed in General Population, Plaintiff was threatened in the prison yard by another Latin Folks-affiliated inmate known as "C Man," who told Plaintiff that he would have Plaintiff stabbed unless Plaintiff went back to PC. (Doc. 91-

3

1, p. 12). On the orders of another inmate, Plaintiff testified that he shouted at the guard in a tower (Defendant Willis) that they had threatened to stab him, that he feared for his life and needed to get off the yard. (*Id.*, p. 13). Defendant Willis states that although he had the tower window open, Plaintiff did not try to speak to him. (Affidavit of James Willis, Doc. 91-7 at 2-3). It is undisputed that Willis did not take any steps to remove Plaintiff from the yard.

Plaintiff stood by the tower for the remainder of the yard period, but was assaulted by a Latin Folks-affiliated inmate as they were walking toward the yard gate. (Doc. 91-1, p. 14). According to a witness inmate, an unidentified officer closed the gate when the fight broke out, and the assault lasted between 90 seconds and two minutes. (Affidavit of Allen Bloomingburg, Doc. 103-1). Bramlet identified himself as the officer who closed the gate in order to contain the incident. (Affidavit of Brad Bramlet, Doc. 91-5). Bramlet and Willis shouted multiple orders to stop and get on the ground, with Bramlet calling an emergency code over the radio. (Docs. 91-7, 91-8). The inmate witness states that the gate officer (apparently Bramlet) did not issue any orders. (Doc. 103-1). No warning shot or chemical irritant spray was used to break up the assault. After the incident, Defendant Allen ordered Plaintiff and the assailant to present themselves to be handcuffed. (Doc. 91-1, pp. 15-16). Plaintiff was then taken to the Health Care Unit ("HCU"). (*Id.*, pp. 17-18). He was examined by healthcare staff and given pain medication, after which photographs were taken by an IA officer of his head injuries. (*Id.*) After exiting the HCU, Plaintiff was taken to the North 2 gallery shower area, where Gardiner interviewed him. (*Id.*, p. 17). He was then placed in segregation in North 2 by Defendant Dudzinski.

4

(*Id*, p. 19). Plaintiff asked him for soap, toilet paper and a bedroll, which he refused to provide. (*Id.*). Plaintiff then asked Defendant Brumleve for soap and toilet paper on several occasions, which he also refused to provide. (*Id.*). It is unclear from his deposition how long Plaintiff went without each item, though in his Amended Complaint he states he received toilet paper and bedroll on March 5, 2017 and soap (through a commissary order) the following day. (Doc. 37, p. 26). Plaintiff was released from segregation on March 14, 2017. (Doc. 91-2).

Plaintiff also testified that he spoke with Brumleve on several occasions beginning March 1, 2017 regarding severe hip and back pain and asking for medical attention. (Doc. 91-1, p. 21). Brumleve refused. (*Id.*). Brumleve testified via affidavit that he does not recall Plaintiff at all, and does not recall him asking for medical treatment. (Doc. 91-11). Plaintiff was eventually seen in the HCU on March 18, 2017, whereupon they began giving him different medications to try to address the pain. (Doc. 91-1, p. 24).

## Discussion

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party is entitled to summary judgment where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. When deciding a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

5

However, if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

**Count 1**

An Eighth Amendment claim for failure to protect requires a plaintiff to demonstrate that he faced a substantial risk of serious harm, and that the defendants knew of and disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). However, a generalized risk of violence is not enough, for prisons are inherently dangerous places. *Brown v. Budz*, 398 F.3d 904, 909, 913 (7th Cir. 2005). Rather, there must be a tangible threat to his safety or well-being. *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Such a threat must reflect that he is subject to a substantial risk of future harm. *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001); *Henderson v. Sheahan*, 196 F.3d 839, 846–847 (7th Cir. 1999). A substantial risk of serious harm is one in which the risk is "so great" that it is "almost certain to materialize if nothing is done." *Brown,* 398 F.3d at 911. There is no question that the threat of physical violence "clearly constitutes serious harm." *Id.* at 910

Defendants' first challenge is that Plaintiff's statements to them on the subjective prong, alleging that Plaintiff's statements to Cowan, Gardiner and in his PC application materials were insufficient to put them on notice of a sufficiently specific risk of future harm. Based on the evidence presented, this argument fails. "[I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters

6

whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Sinn v. Lemmon*, 911 F.3d 412, 421 (7th Cir. 2018). Plaintiff told Cowan and Gardiner that all prisoners in his situation (off-count Latin Folks affiliates in General Population) were subject to assault on that basis, and that the policy had been specifically reiterated to him by at least one on-count affiliate. This was then repeated in the PC application materials and before Knauer at the ARB hearing. A reasonable jury could find on this evidence that Cowan, Gardiner and Knauer had the requisite knowledge to satisfy the subjective prong of deliberate indifference.

Further, Defendants' contention that Baldwin and Hutchinson cannot be liable because they never reviewed Plaintiff's PC requests holds no water. They are correct that to recover damages under Section 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right, and that there is no *respondeat superior* or vicarious liability for a constitutional violation. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). However, this does not insulate supervisory employees entirely. A supervisor may be liable if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Backes v. Vill. of Peoria Heights, Ill.*, 662 F.3d 866, 870 (7th Cir. 2011). The Illinois Administrative Code provisions dealing with applications for placement in PC put responsibility for making final determinations personally on the Chief Administrative Officer of the facility, and final determination of any related grievance on the IDOC Director. 20 IL Admin Code § 501.320(c) and (d). Unlike other

7

provisions of that regulation, no other individual may routinely perform these duties—only in periods of that individual's "temporary absence or in an emergency." 20 IL Admin Code § 501.305(b). The record is unclear whether the fact that both mandated reviewers delegated their responsibility for review to an unidentified designee signing in his place is an amazing coincidence or evidence of "turning a blind eye" to protective custody requests that by their very nature implicate inmate safety. Without additional evidence, there remains a genuine issue of material fact on this aspect of the case.

Accordingly, summary judgment is denied as to Count 1.

### Count 2

A failure to intervene claim is essentially the same as a failure to protect claim, translated from a threat to an active situation. The mere fact that correctional officers are present during a violent altercation between inmates and do not immediately throw themselves into the fray does not alone satisfy the standard for deliberate indifference. See *Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir.2007); *Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011).

As an initial matter, Plaintiff offers no argument as to why Defendants Baker, Campbell, Hood, Lee, Lindsey, Murphy, Mathis, Roland, Sternberg, Smith, Welborn, and Wehrenberg are not entitled to summary judgment. The Court therefore considers the matter conceded.

Summary judgment is also appropriate in favor of Allen and Bramlet. Plaintiff has produced no evidence that Allen was present when the fight broke out or had a reasonable opportunity to intervene to stop the assault. As for Bramlet, even viewing the

8

evidence in the light most favorable to Plaintiff and crediting the inmate witness testimony that he did not shout any orders to stop, his actions do not amount to deliberate indifference. In *Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007), the Seventh Circuit found that even if a corrections officer witnessing an assault only made the emergency call for backup and then left her post for upward of three minutes, it did not amount to deliberate indifference as a matter of law. The Court can find no basis to distinguish Bramlet's conduct in this case from the corrections officer in *Guzman*. As such, summary judgment will be granted in Allen and Bramlet's favor as well.

Defendant Willis is not entitled to summary judgment. Willis states that Plaintiff did not try to speak with him prior to the incident about the danger he felt. Plaintiff states that he shouted up at Willis in the tower, telling him that someone had threatened to stab him and he needed to get off the yard. This is a genuine issue of material fact. Summary judgment is denied as to Willis.

**Count 3**

An Eighth Amendment conditions of confinement claim requires a plaintiff to show that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety, and that the defendant acted with deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer v. Brennan*, 511 U.S. 825, 834 and 842 (1994). These "necessities" include adequate sanitation and access to necessary personal hygiene items. *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013). A combination of unsanitary conditions

9

or deprivations which individually may not amount to a constitutional issue may suffice when viewed in the totality of circumstances.  *Id.*

Here, Dudzinski and Brumleve argue that the alleged deprivations (six days without toilet paper and bedroll and seven without soap) are inadequate as a matter of law to satisfy the standard.  Although the period in question was relatively short, the combination of lack of toilet paper and lack of soap poses a troubling situation in segregation, where prisoners are also generally required to eat in their cells.  Additionally, there is a question of fact regarding Plaintiff's abrasions from the assault and whether they posed a risk of infection in such an environment.  As such, summary judgment is denied on Count 3.

## Count 4

In order to prevail on an Eighth Amendment claim for deliberate indifference to a medical condition, a plaintiff must show (1) that his condition was objectively, sufficiently serious and (2) that the prison officials acted with a sufficiently culpable state of mind.  *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).  A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  *Foulker v. Outagamie County*, 394 F.3d 510, 512 (7th Cir. 2005).

Untreated severe pain alone may qualify as a serious medical condition.  *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996).  "Pain is a 'uniquely subjective experience,' and it is not appropriate to conclude at summary judgment that nontrivial pain alleged by an inmate is not deserving of treatment."  *Diaz v. Godinez*, 693 F. App'x 440, 443–44 (7th Cir.

10

2017) (*quoting Cooper*, 97 F.3d at 917).  Although there is some discrepancy between Plaintiff's testimony and the HCU records as to whether he complained of back pain between March and August 2017, this is an issue of credibility that cannot be resolved on summary judgment.

Further, the subjective prong of deliberate indifference presents a question for the jury.  Plaintiff testified that he told Brumleve that he needed medical assistance because of excruciating pain.  Brumleve's affidavit states that he does not remember Plaintiff or having any interactions with him.  Whether Plaintiff made these statements and whether they were sufficient to alert Brumleve to the issue are still in contention.  As such, summary judgment is denied on Count 4.

## Qualified Immunity

Defendants' assertion of qualified immunity on the remaining claims is denied. Officers are entitled to qualified immunity under Section 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). "Clearly established" means that, at the time of the officer's conduct, the law was "sufficiently clear that every reasonable official would understand that what he is doing" is unlawful. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quotations omitted).

Each of the constitutional rights at issue here was clearly established at the time in question, as discussed above.  Moreover, Plaintiff's allegations on the surviving claims are sufficient (if adequately proven) to establish violations of those constitutional rights. As such, qualified immunity is inapplicable here.

## Conclusion and Disposition

For the reasons stated above, the Court **GRANTS in part and DENIES in part** Defendants' Motion for Summary Judgment (Doc. 90). Count 2 is **DISMISSED** as to Defendants Allen, Baker, Bramlet, Campbell, Hood, Lee, Lindsey, Murphy, Mathis, Roland, Sternberg, Smith, Welborn, and Wehrenberg. The Clerk of Court is **DIRECTED** to terminate them as parties in the CM/ECF system, and to enter judgment in their favor at the conclusion of the case.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Summary Judgment is such a hurdle, but it is a very low one for the Plaintiff to clear. Clearing the Summary Judgment hurdle does not mean that the Plaintiff has won his case nor does it mean that he is entitled to damages or other relief. As noted above, clearing the summary judgment hurdle only requires the existence of a disputed fact material to the Plaintiff's claim. At trial, he will need to *prove* that the disputed fact did, in fact, occur as the Plaintiff says it occurred. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.

**IT IS SO ORDERED.**

DATED: May 24, 2021

DAVID W. DUGAN
United States District Judge